# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWEST DIVISION

| | |
|---|---|
| **JOSHUA SHARP, on behalf of himself and others similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) **Civil Action No:** ) ) |
| **AMETROS FINANCIAL CORPORATION,** | ) ) ) |
| **Defendant.** | ) ) |

## COMPLAINT

Joshua Sharp, individually and as a representative of a Class of similarly situated individuals, brings this Complaint against Ametros Financial Corporation ("Ametros") and alleges as follows:

## INTRODUCTION

1. Ametros markets and sells post-settlement medical administration services to individuals that have received funds from workers' compensation and liability settlements.

2. In marketing its services to individuals that have received such settlements, Ametros promises that its members can save on healthcare and that it will obtain major discounts on medical services. Specifically, Ametros claims on

1

its website that saves its members "on average 62% on provider visits and 28% on your prescriptions."

3. Plaintiff Joshua Sharp's settlement account was managed by Ametros. As set forth in detail below, Ametros failed to pass on these promised discounts and savings to Mr. Sharp. Instead, Ametros prematurely exhausted Mr. Sharp's settlement account each year and failed to pass on the purported discounts to Mr. Sharp.

4. Ametros misrepresented to Mr. Sharp and the proposed class members that, in managing their settlement accounts, it would obtain discounts for medical services and prescriptions. Instead, Ametros pocketed any such discounts for its own revenues and failed to pass on *any* significant discounts to Plaintiff and Class Members.

5. Ametros's misrepresentations and wrongful conduct injures individuals like Mr. Sharp that have been severely injured and rely on settlement proceeds to pay for the medical care needed as a result of those injuries. These individuals relied on Ametros's representations that it would effectively manage their settlement funds and obtain promised discounts. Instead, the Plaintiff's and Class members' settlement accounts, which are funded annually, have been prematurely depleted in given years as a result of Ametros's actions.

2

## THE PARTIES

5. Plaintiff Joshua Sharp is a citizen of the State of Alabama, is over the age of nineteen (19) years, and is a resident of Lauderdale County, Alabama.

6. Defendant Ametros Financial Corporation is a Delaware Corporation with its principal place of business in Burlington, MA and is registered to do business in Alabama.

7. On information and belief Ametros's business model including its marketing and representations, as detailed herein, are uniform within the markets in which it sells its services.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the parties are completely diverse in citizenship and the amount is controversy exceeds $75,000.00. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5 million and diversity of citizenship exists between Plaintiff and Defendant. Venue is proper in this Court under 28 U.S.C. § 1391 and 15 U.S.C. § 22 because a significant portion of the events, acts, and omissions giving rise to this action occurred in the District, and Defendant transacts business, or is found within this District.

## FACTS

9. On July 29, 2015, plaintiff received Colbert County Circuit Court

approval of the settlement of his Worker's Compensation lawsuit against his former employer.

10.   The terms of the Court Approved settlement in Colbert County are reflected in the Consent Decree heretofore entered on July 29, 2015 in case No. 20-CV-2012-900081, [Document 194].

11.   On July 29, 2015, Mr. Sharp entered into a "Medical Cost Projection Post-Settlement Administration Agreement" (the "Administration Agreement") with Ametros whereby Ametros would provide professional administration services in connection with Mr. Sharp's forecasted medical expenses set forth in the April 29, 2015 MCP through its CareGuide payment service ("CareGuard"). Ametros was selected by Millennium Risk Managers, the Third-Party Administrator for the payor of the settlement proceeds.

12.   The material terms of the settlement are a Medicare Set Aside (Approved by Medicare and the Colbert County Circuit Court) funded by annuitized annual payments of $24,433.58 beginning on September 1, 2016 for a maximum of 34 years and a Non-Medicare Expense Fund funded by annuitized annual payments of $74,187.66 beginning on September 1, 2016 for a maximum of 34 years.

13.   Pursuant to the terms of the Administration Agreement, Ametros, through its CareGuard payment service, is responsible for distributing funds from

both of those accounts according to Mr. Sharp's MCP and in accordance with the terms of the settlement agreement.

14. In exchange for these administration services, Mr. Sharp paid Ametros two $450.00 annual fees paid out of the settlement fund.

15. Under the Administration Agreement Ametros also has a duty "[t]o use commercially reasonable efforts to secure retail discounted purchases to Member for prescription drugs, durable medical equipment and other health related services, in each case, solely in connection with the treatment of the injury or condition identified in the MCP."

16. Ametros' website heavily advertises these discounts and that, through its CareGuard product, Ametros will negotiate substantial reductions on provider visits. It's website states that "[t]hrough Ametros' discount networks, you can save on average 62% on provider visits and 28% on your prescriptions. Our team reviews every bill for savings, making your funds last longer."

17. The Ametros website also states that, "[b]ecause Ametros has thousands of individuals receiving medical treatments, we are able to negotiate network purchasing discounts on your behalf. This means we are setting up pharmacies, doctors and equipment providers to vie for your business and offer you discounts."

18. Further, the Ametros website states:

> Behind the scenes, we receive all of your medical bills and review them to ensure they are accurate and to apply our network discounts. CareGuard has established multiple partnerships with national networks of physicians, pharmacies, and durable medical equipment providers. By using your CareGuard card, you take advantage of our group buying power and we secure you discounts. With CareGuard, there are no restrictions on the providers you can see. You can visit physicians in or out of our network; you have the freedom to choose without ever dealing with utilization review.

19. For a selection of Mr. Sharp's medical claims for the years 2017 and 2018, Ametros received *no* discount on pharmacy claims, and Ametros actually paid out *more* than the billed charges for those claims. Ametros' own reports provided to Mr. Sharp indicate that from inception of the MCP account to October 2018, Mr. Sharp's MCP account paid *more* than it was billed on those claims.

20. For the same claims period, the average discount negotiated by Ametros for Mr. Sharp's professional claims was only 9%. The average discount negotiated on specialty claims (DME, imaging, *etc*.) was less than 1%.

21. While a broader review of Mr. Sharp's records shows discounts at some hospitals or physician providers, the total of these discounts is far lower than the averages Ametros claims in its marketing and public facing materials.

22. Overall, despite its claims of average savings, Ametros completely exhausted each of Mr. Sharp's two settlement funds in each of the last 3 years for which is administered the funds. In at least one year, Mr. Sharp's funds were

6

exhausted many months before September 1st, the date the annual funding occurs. Thus, he went several months without money to pay for his costly medical claims. These funds were depleted faster than they should have been because he received essentially no discount on pharmacy and DME claims through Ametros.

23. Because of the depletion of his settlement claims, Mr. Sharp has attempted to seek Medicare coverage to pay for his medical treatment. Medicare, however, refuses to pay Mr. Sharp's claims on the basis that he should still have settlement funds available to pay for his medical treatment—the funds that Ametros wrongfully depleted through its failure to obtain promised discounts.

24. In addition, Ametros did not provide the Medicare required statements to the client in violation of relevant regulations and in an effort to keep from providing this information to the Plaintiffs and the Class.

25. Mr. Sharp and the members of the proposed class set forth below relied upon Ametros's representations and its duty to obtain discounts for medical services on their behalf. However, Ametros failed to provide Mr. Sharp and the proposed class members with these promised discounts. As a result, Plaintiff Sharp and the proposed class members have not received the promised value of Ametros's CareGuard product. Rather, Plaintiff and the proposed class members have substantially overpaid Ametros for the simple administration of their settlement accounts and have not received the promised benefit of negotiated

7

discounts.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this class action lawsuit on behalf of himself and the Class pursuant to Federal Rules of Civil Procedure 23(b)(1), (2) and (3).

27.     Plaintiff brings this class action on behalf of himself and the following class of persons for claims arising under federal law:

> All persons who, at any time between August 30, 2013 to present that had a Medical Cost Projection Post-Settlement Administration Agreement with Ametros and received services under that agreement through Ametros's CareGuard payment services product.

28.     The requirements of Rule 23, including the numerosity, commonality, predominance, typicality, adequacy and/or superiority elements are all satisfied.

29.     <u>Numerosity</u>: The members of the proposed Class are so numerous that joinder of all members is impracticable. The proposed Class includes thousands of members. The precise number of members of the Class can be easily ascertained through discovery, which will include Defendant's records.

30.     <u>Commonality/Predominance:</u> There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one class member to another, are based on Defendant's uniform treatment of members of the proposed Class and Subclasses, and which may be determined without reference to the individual

circumstances of any class member, include, but are not limited to the following:

    (a)    Whether Ametros' public marketing materials misrepresented the services they provide and the level of discounts;

    (b)    Whether Ametros used commercially reasonable efforts to obtain discounts on behalf of Plaintiff and Class members;

    (c)    Whether Ametros passed on discounts to Plaintiff and Class members;

    (d)    Whether Ametros charged Plaintiff and Class Members for the full cost of medical services while pocketed the discounted amounts for its own revenue;

    (e)    Whether Ametros has been unjustly enriched; and

    (f)    Whether Plaintiff and Class members have suffered damages as a result of Ametros's actions.

31. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all class members have been injured by the same wrongful practices in which Defendant has engaged. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and are based on the same legal theories.

32. <u>Adequacy</u>: Plaintiff who will fully and adequately assert and protect the interests of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interests which are contrary to or conflicting with the Class.

33. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of

9

the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each class member resulting from Defendant's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgment and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Defendant has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## FIRST CAUSE OF ACTION

(Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing)

34. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

35. In breach of contract and the covenant of good faith and fair dealing, Ametros, without adequately notifying the customer, failed to use commercially reasonable efforts obtain or provide discounts for medical services as required by the Administration Agreement.

36. Plaintiff and Class members have been, and will continue to be, damaged by Ametros's failure to use commercially reasonable efforts to provide the promised discounts causing a premature depletion of settlement accounts.

## SECOND CAUSE OF ACTION

(Intentional Misrepresentation)

37. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

38. As mentioned in detail above, Ametros misrepresented to the Plaintiff and Class members on its website and in other marketing materials that its CareGuard program would save money on medical expenses. Specifically, Ametros misrepresented to Plaintiff and Class Members that, through its market power, Ametros would be able to obtain substantial discounts on medical services. However, Ametros failed to obtain or provide the promised discounts resulting in

11

the premature depletion of Plaintiffs and Class Members settlement funds.

39. Ametros was aware that its failure to use commercially reasonable efforts to obtain the promised discounts was improper.

40. Ametros purposefully engaged in the above-mentioned conduct since the revenue generated from this conduct constituted a significant portion of Ametros's income.

41. Plaintiff and others believed, trusted and relied on Ametros, and, in justifiable reliance thereon, continued to obtain medical services believing that Ametros was obtaining discounts on their behalf.

42. As a proximate result of these acts, the settlement funds of the Plaintiff and other members of the Class were prematurely depleted.

43. Plaintiff and Class Members relied on Ametros's representations that it would obtain discounts for Plaintiffs and Class members, all to their damage.

## THIRD CAUSE OF ACTION

(Negligent Misrepresentation)

44. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

45. As mentioned in detail above, Ametros misrepresented to the Plaintiff and Class members on its website and in other marketing materials that its CareGuard program would save money on medical expenses. Specifically,

Ametros misrepresented to Plaintiff and Class Members that, through its market power, Ametros would be able to provide substantial discounts on medical services. However, Ametros failed to obtain or provide the promised discounts resulting in the premature depletion of Plaintiffs and Class Members settlement funds.

46. Ametros was aware that its failure to use commercially reasonable efforts to obtain the promised discounts was improper.

47. Plaintiff and others believed, trusted and relied on Ametros, and, in justifiable reliance thereon, continued to incur costs for medical services believing that Ametros was obtaining promised discounts resulting in higher payments for those medical services.

48. As a proximate result Ametros's negligence, Plaintiff and other members of the Class were induced to spend an amount to be determined at trial on medical services as a result of Ametros' misconduct, and thereby lost disproportionate sums of money through the depletion of their settlement accounts.

49. Plaintiff and Class Members relied on Ametros's representations that it would obtain discounts for Plaintiffs and Class members, all to their damage.

## FOURTH CAUSE OF ACTION

(Conversion)

50. Plaintiff repeats and realleges all preceding paragraphs, as if fully set

forth herein.

51. Plaintiff and Class members own and have a right to possess the money in their settlement accounts.

52. Ametros interfered with, and continues to interfere with, possession of this money owned by Plaintiff and Class members by failing to obtain or apply promised discounts and depleting settlement funds prematurely.

53. Plaintiff and Class members never affirmatively consented to Ametros's payment of funds of settlement accounts for medical services at prices much higher than normal commercial rates and without Ametros using efforts to obtain promised discounts.

54. Plaintiff and Class members have been, and will continue to be, damaged by Ametros's wrongful payment of settlement funds in amounts above and beyond the promised discounted amounts. These amounts are capable of identification through Ametros's records.

## FIFTH CAUSE OF ACTION

(Unjust Enrichment)

55. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

56. Ametros has benefited from its unlawful acts by receiving excessive revenue derived from, as described in detail above, Ametros was failing to pass

along discounts negotiated to Plaintiff and Class members. Instead, Ametros was charging Plaintiff and Class Members for the full cost of medical services and pocketed the discounted amounts for its own revenue. This excessive revenue has been received by Ametros at the expense of Plaintiff and other members of the Class, under circumstances in which it would be inequitable for Ametros to be permitted to retain the benefit.

57. Plaintiff and other members of the Class are entitled to the establishment of a constructive trust consisting of the benefit conferred upon Ametros in the form of their excessive revenue derived from the overdraft fees from which Plaintiff and other Class members may make claims on a pro rata basis for restitution.

## SIXTH CAUSE OF ACTION

(For Injunctive and Declaratory Relief)

58. Plaintiff repeats and realleges all preceding paragraphs, as if fully set forth herein.

59. As set forth above, Ametros engaged in improper and unlawful practices in connection with payment of settlement funds from the Plaintiffs and Class members settlement accounts.

60. Ametros's practices described herein are unlawful and against public policy and, therefore, Ametros should be prohibited and enjoined from engaging in

these practices in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on her own behalf and on behalf of the Class, demands judgment in their favor and against Defendant as follows:

    a.    For an Order certifying the Class pursuant to Fed.R.Civ.P. 23 appointing Plaintiff as the representative of the Class, and appointing counsel for Plaintiff counsel for the Class;

    b.    For an Order certifying a class of similarly situated people;

    c.    For an Order enjoining Ametros' wrongful conduct;

    d.    For an award of all compensatory and other damages suffered by Plaintiff and the Class;

    e.    For an award of all costs incurred by Plaintiff in pursuing this action;

    f.    For an award of reasonable attorneys' fees; and

    g.    For any other relief the Court deems reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable.

Date:  August 30, 2019            Respectfully submitted,


                                                */s/ W. Tucker Brown*
W. Tucker Brown
WHATLEY KALLAS, LLP
2001 Park Place Tower
Suite 1000
Birmingham, AL  35203
Tel: 205-488-1200
Fax: 800-922-4851

J. Wilson Mitchell
MITCHELL BURDINE & BERNAUER
1905 Bruin Drive
Florence, AL  35630
Tel:  256-767-4900
Email:  jwm82256@aol.com